UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**AUGUST URIBE FINE ART, LLC,**

  **Plaintiff,**

  v.

**DARTMILANO SRL,** *et al.***,**

  **Defendants.**

Civ. No. 22-3104 (KM) (JBC)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the Court on the motion (DE 8)[1] of defendants DARTMILANO SRL ("DART"), Pier Giulio Lanza, and Riccardo Manfrin (collectively, the "DART defendants") to dismiss the complaint of August Uribe Fine Art, LLC ("UFA") under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), and the motion (DE 23) of Fracassi Worldwide Shipping SRL ("Fracassi") to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the DART defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part, and Fracassi's motion to dismiss is **GRANTED**.

---

[1] Certain citations to the record are abbreviated as follows:

DE = docket entry

Compl. = Complaint (DE 1)

DART Br. = DART defendant's Brief in Support of Motion to Dismiss (DE 8-1)

Fracassi Br. = Fracassi's Brief in Support of Motion to Dismiss (DE 23-1)

UFA-D Opp. = UFA's Brief in Opposition to the DART defendants' Motion to Dismiss (DE 22)

I.  **BACKGROUND**

A. **Factual Summary**

Plaintiff UFA is owned and operated by August Uribe, an individual with experience in the world of fine arts. (Compl. ¶ 1.) In the summer of 2021, Uribe was introduced to defendant Maria Stellina Marescalchi, an art dealer. (*Id.* ¶¶ 5, 21.) Marescalchi informed Uribe that she had a museum client, DART, which wanted UFA's help to purchase a certain artwork. (*Id.* ¶ 22, 24.) At the time, the artwork was being held in New York by an agent of the artwork's owner. (*Id.* ¶ 23.) UFA and the agent entered into a contract wherein UFA would acquire the artwork from the owner. (*Id.* ¶ 25.)

On August 19, 2021, UFA also entered into a contract with DART wherein UFA agreed to sell DART the artwork (the "Purchase Agreement"). (*Id.* ¶ 26; *see* DE 8-3.)² Defendant Pier Giulio Lanza executed the Purchase Agreement on behalf of DART. (*See* DE 8-3.) Per the agreement, the artwork would be transported to storage by Fracassi and held at the Aiston Fine Art ("Aiston") warehouse in New York. (DE 8-3; Compl. ¶¶ 33–34.) The artwork

---

² Generally, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. Mar. 31, 2022) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Where a document, however, is "integral to or explicitly relied upon in the complaint," it "may be considered without converting the motion to dismiss into one for summary judgment" under Federal Rule of Civil Procedure 56. *Id.* (quoting *Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020)). For a court to consider such a document, however, that document must be "undisputedly authentic." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Here, the complaint explicitly refers to and rests upon two agreements between UFA and DART: The Purchase Agreement (Compl. ¶¶ 26–32) and the Payment and Standstill Agreement (*Id.* ¶ 67–69). DART attached both agreements to its motion to dismiss (DART Br. Ex. A, 8-3; Ex. B, 8-4). No party disputes the authenticity of those documents or denies that they are the agreements explicitly cited in the complaint. Therefore, I may consider the Purchase Agreement and the Payment and Standstill Agreement. I adopt the neutral naming convention used by the parties in the executed agreements and not the naming convention used by UFA in its complaint.

would remain at the Aiston warehouse and UFA would remain the sole owner of the artwork until DART made the required payments. (DE 8-3; Compl. ¶ 34.) If DART failed to make the required payments, UFA was entitled to regain possession of the artwork. (DE 8-3.) The agreement includes a provision titled "Art. 7) GOVERNING LAW," which says little about governing law but states that any dispute shall be under the jurisdiction of "the International Commercial Chamber of New York":

> For anything not agreed and / or expressly waived in this agreement shall refer to the provisions of applicable law. Any dispute arising from this agreement, including those relating to its validity, interpretation, execution and termination, will be under the jurisdiction of the International Commercial Chamber of New York.

(*Id.*) Any amendment to the Purchase Agreement was to be made in writing and to include the "exact indication of the clause to be amended and/or supplemented." (*Id.*)

DART failed to make its first payment. (Compl. ¶ 35.) On August 27, 2021, Marescalchi advised UFA that, in order for DART to remit payment, its "donors" must verify the artwork. (*Id.* ¶ 36.) Marescalchi suggested that UFA transfer the artwork from the Aiston warehouse to a warehouse in New Jersey, where DART's donors happened to be viewing other works. (*Id.* ¶ 38.) UFA agreed to move the artwork to the New Jersey warehouse. (*Id.* ¶ 41.) It was UFA's understanding that all other terms of the agreement would remain the same and that the artwork would remain in UFA's possession and control. (*Id.* ¶ 43.)

DART again failed to make the required payment. (*Id.* ¶ 61.) On March 10, 2022, UFA and DART entered into a second agreement (the "Payment and Standstill Agreement"), which stated that UFA would defer litigation, subject to DART making payments due under a new payment schedule. (DE 8-4.) The Payment and Standstill Agreement provided that New Jersey law would govern both the Purchase Agreement and the Payment and Standstill Agreement, and

that the parties submitted to the jurisdiction of this Court with respect to disputes under the agreements:

> a. The Parties agree that both the Purchase Agreement and the Payment and Standstill Agreement shall be governed by the laws of the State of New Jersey without regard to its conflicts of law principles.
>
> b. The Parties submit to the exclusive jurisdiction of the United States District Court for the District of New Jersey with respect to the resolution of any disputes relating to the Purchase Agreement or the Payment and Standstill Agreement (collectively, the "Agreements").

(DE 8-4.) Lanza and Riccardo Manfrin personally guaranteed DART's obligations under the contract. (DE 8-4; Compl. ¶ 68.) The new agreement also stated: "In the event of any conflict between the terms of the Purchase Agreement and the Payment and Standstill Agreement, the terms of the Payment and Standstill Agreement shall control." (DE 8-4.) Lanza and Manfrin signed the agreement on behalf of DART. (DE 8-4.)

In February 2022, UFA learned that the artwork was being shopped for sale by defendants and that the artwork had been transferred to defendant Art Lending, Inc. ("Art Lending") via defendant Oblyon Group, LLC ("Oblyon"). (Compl. ¶ 62.) UFA alleges on information and belief that the following had occurred in the interim, without its knowledge: On September 1, 2021, shortly after the artwork was relocated to New Jersey, Fracassi and Oblyon arranged to have the artwork transferred to Oblyon's account at the New Jersey warehouse. (*Id.* ¶ 50.) On September 9, 2021, Oblyon transferred the artwork to Art Lending. (*Id.* ¶ 52.) Then, DART secured a loan from Art Lending using the artwork as collateral. (*Id.* ¶ 55.) Art Lending alleges that it maintains a lien on the artwork. (*Id.* ¶ 56.)

DART still has not made the required payments pursuant to its agreements with UFA. (*Id.* ¶¶ 73, 76.) In addition, DART refuses to allow UFA to remove the artwork from storage. (*Id.* ¶ 74.) The artwork is currently being held

4

at the New Jersey warehouse, where it will remain pending the outcome of this litigation. (*Id.* ¶¶ 9, 66.)

### B. Procedural History

On May 26, 2022, UFA filed its complaint alleging eight counts: breach of contract against DART, Lanza, and Manfrin (Count 1); conversion against DART, Fracassi, Oblyon, and Art Lending (Count 2); fraud against DART, Lanza, Manfrin, and Marescalchi (Count 3); aiding and abetting fraud against Fracassi, Oblyon, and Art Lending (Count 4); replevin against DART, Fracassi, Oblyon, and Art Lending (Count 5); conspiracy against all defendants (Count 6); order quieting title and possession under 28 U.S.C. § 1655 – in rem/quasi in rem (Count 7); and breach of bailment agreement against Fracassi (Count 8). On July 19, 2022, the DART defendants moved to dismiss the complaint. (DE 8.) On September 8, 2022, Fracassi filed a separate motion to dismiss the complaint. (DE 23.) UFA filed an opposition to each motion (DE 22; 31), to which the moving defendants replied (DE 27; DE 40.)

## II. DISCUSSION

### A. Personal Jurisdiction

First, I address the argument that the Court cannot exercise personal jurisdiction over the DART defendants.

To assess whether a court has personal jurisdiction over a defendant, a district court must undertake a two-step inquiry. *IMO Indus., Inc. v. Kiekert, AG*, 155 F.3d 254, 258–59 (3d Cir. 1998). First, the court is required to use the relevant state's long-arm statute to see whether it permits the exercise of personal jurisdiction. *Id.*; Fed. R. Civ. P. 4(k). "Second, the court must apply the principles of due process" under the federal Constitution. *WorldScape, Inc. v. Sails Capital Mgmt.*, No. 10-cv-4207, 2011 WL 3444218, at *3 (D.N.J. Aug. 5, 2011) (citing *IMO Indus.*, 155 F.3d at 259).

In New Jersey, the first step collapses into the second because "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales, Inc.*

*v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing N.J. Ct. R. 4:4-4(c)). Accordingly, personal jurisdiction over a non-resident defendant is proper in this Court if the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Provident Nat'l Bank v. Cat Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted).

There are two kinds of personal jurisdiction that allow a district court to hear a case involving a non-resident defendant: general and specific. A court may exercise general jurisdiction over a foreign corporation where "the defendant's contacts with the forum are so 'continuous and systematic' as to render them essentially 'at home' in the forum state." *Senju Pharm. Co., Ltd. v. Metrics, Inc.*, 96 F. Supp. 3d 428, 435 (D.N.J. 2015) "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citation omitted).

In contrast to general jurisdiction, specific jurisdiction relies on the defendant's forum-related activities that give rise to the plaintiff's claims. To determine whether this court may exercise personal jurisdiction, this court must engage in a fact-intensive analysis. *Strategic Prod. & Servs., LLC v. Integrated Media Techs., Inc.*, No. 18-cv-694, 2019 WL 2067551, at *7 (D.N.J. May 10, 2019).

"A Rule 12(b)(2) motion, such as the motion made by the defendants here, is inherently a matter which requires resolution of factual issues outside the pleadings, *i.e.* whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Patterson v. FBI*, 893 F.2d 595, 603-04 (3d Cir. 1990) (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984)). When the District Court does not hold an evidentiary hearing, the plaintiff

"need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Murphy v. Eisai, Inc.*, 503 F. Supp. 3d 207, 214 (D.N.J. 2020) (quoting *Miller Yacht Sales, Inc.*, 384 F.3d at 97.

UFA asserts that the Court has specific personal jurisdiction over the DART defendants. "The inquiry as to whether specific jurisdiction exists has three parts. First, the defendant must have 'purposefully directed [its] activities' at the forum. Second, the litigation must 'arise out of or relate to' at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (citations omitted).

### 1. Purposeful Availment

I first look to "purposeful availment," *i.e.*, whether the defendants purposefully directed their activities at the forum state of New Jersey. *O'Connor*, 496 F.3d at 317. A defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

I find that this element is satisfied. According to the complaint, the artwork at issue is currently located in New Jersey because the DART defendants, through Marescalchi, requested that the artwork be brought to and stored at a warehouse in this State. The DART defendants then used the artwork as collateral to obtain a loan in New Jersey. (Compl. ¶¶ 36–41, 55, 66.)

There is more. The parties also agreed in the Payment and Standstill Agreement to "submit to the exclusive jurisdiction of the United States District Court for the District of New Jersey with respect to the resolution of any disputes relating to the Purchase Agreement or the Payment and Standstill Agreement." (DE 8-4.) The DART defendants argue that the jurisdiction clause is not enforceable because it is an improper amendment to the Purchase Agreement, which required any amendment to include "the exact indication of

7

the clause to be amended and/or supplemented." (DART Br. pp. 7–8; *see* DE 8-3.) I disagree. The Payment and Standstill Agreement is a separate agreement, entered into by the same parties as the Purchase Agreement. Moreover, it explicitly provides that "[i]n the event of any conflict between the terms of the Purchase Agreement and the Payment and Standstill Agreement, the terms of the Payment and Standstill Agreement shall control." (*See* DE 8-4.) Under the plain terms of the Purchase and Standstill Agreement, the DART defendants agreed to submit to the exclusive jurisdiction of this Court.

The DART defendants also argue that the jurisdiction clause in the Payment and Standstill Agreement is unenforceable because the Purchase Agreement was procured by fraud. (DART Br. p. 6)[3] The DART defendants' assertion in its briefing that it was fraudulently induced to enter into the Purchase Agreement (not the Payment and Standstill Agreement) is an affirmative merits-based defense that, at this stage of the litigation, does not overcome the other considerations weighing in favor of finding specific personal jurisdiction in this case.

### 2. Relatedness Requirement

Second, I must determine whether the contacts meet the "relatedness requirement"—*i.e.*, whether this litigation arises out of or relates to at least one of the defendants' contacts with New Jersey. *O'Connor*, 496 F.3d at 317.

---

[3] Generally, a contractual choice of forum is enforceable:

> Where such forum-selection provisions have been obtained through "freely negotiated" agreements and are not "unreasonable and unjust," *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972), their enforcement does not offend due process.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 105 S. Ct. 2174, 2182, 85 L. Ed. 2d 528 (1985). Here, while I take the forum selection clause into account, it is hardly essential. As set forth in text, the DART defendants created the connection to New Jersey by moving the artwork here, freely entered into the second, Payment and Standstill Agreement, and allegedly exercised rights of ownership by pledging the artwork as security. This is not a case of a party's being haled into a foreign forum by virtue of the other party's unilateral action.

I find that the contacts in this case specifically pertain to the claims against the DART defendants. The DART defendants are alleged to have defrauded UFA by making false statements in order to induce UFA to move the artwork to a warehouse in New Jersey, converted the artwork while it was held in the New Jersey warehouse, and breached the contract by, among other things, refusing to release the artwork from the New Jersey warehouse. (Compl. ¶¶ 65, 74, 89.) Given the DART defendants' contacts directed at New Jersey, it is reasonable and foreseeable that a claim arising from those contacts would be asserted against them in New Jersey.

### 3. Fairness Requirement

Third, I must determine whether these contacts satisfy the overall "fairness requirement," *i.e.*, whether exercising jurisdiction otherwise comports with traditional notions of fair play and substantial justice. *O'Connor*, 496 F.3d at 317. "The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 324 (internal quotations omitted). As the Supreme Court has stated, "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 114 (1987).

The DART defendants do not present, and I do not see, a compelling case that litigating in New Jersey would be unreasonable and unfair. The DART defendants are alleged to have desired and brought about the transfer of the artwork to a New Jersey warehouse, where it sits today. All of the disputes center around the parties' rights with respect to that artwork. The DART defendants also agreed to submit to the exclusive jurisdiction of this Court in the event of any dispute regarding the parties' agreement. Given the acts and expectations of the parties, New Jersey has a "manifest interest" in providing an effective means of redress against defendants.

Therefore, I find that the court possesses specific personal jurisdiction over the DART defendants.

### B. Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). On such a motion, the well-pleaded factual allegations of the complaint must be taken as true, with all reasonable inferences drawn in plaintiff's favor. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, demonstrating that it is "plausible on its face." *See Twombly*, 550 U.S. at 570; *see also Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). This entails "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.* Stated differently, in reviewing the well-pleaded factual allegations and assuming their veracity, this Court must "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

### 1. Conversion and Replevin

DART and Fracassi seek dismissal of UFA's claims for conversion and replevin (Counts 2 and 5) for failure to state a claim.

In New Jersey, common law conversion consists of the following elements: "(1) the existence of property, (2) the right to immediate possession thereof belonging to [the] plaintiff, and (3) the wrongful interference with that right by [the] defendant." *Read v. Profeta*, 397 F. Supp. 3d 597, 640 (D.N.J. 2019). "[O]ne of the essential elements of the tort of conversion [is] ownership of goods or chattels." *Peloro v. United States*, 488 F.3d 163, 174 (3d Cir. 2007) (quoting *Boccone v. Eichen Levinson, LLP*, No. 04-cv-3871, 2007 WL 77328, at *7 (D.N.J. Dec. 26, 2006)); *see also Saint-Ulysse v. Great Lakes Educ. Loan Servs., Inc.*, No. 21-cv-14677, 2022 WL 17751335, at *5 (D.N.J. Dec. 16, 2022) ("To state a conversion claim, the plaintiff must allege that he maintains the 'right to immediate possession' of, as opposed to a mere claim to, the property." (quoting *First Nat. Bank of Bloomingdale v. N. Jersey Tr. Co., Ridgewood*, 14 A.2d 765, 767 (N.J. Sup. Ct. 1940))).

Additionally, under New Jersey law, "[a] person seeking recovery of goods wrongly held by another may bring an action for replevin . . . . If the person establishes the cause of action, the court shall enter an order granting possession." N.J. Stat. Ann. § 2B:50-1. To succeed in a replevin action, the burden is on plaintiff to establish "absolute ownership and right to the possession" of the property. *Mandelbaum v. Weiss*, 11 N.J. Super. 27, 30–31, 77 A.2d 493 (App. Div. 1950); *see also Hunt v. Chambers*, 21 N.J.L. 620, 623 (E. & A. 1845) ("To maintain replevin, the plaintiff must have the right of exclusive possession to the goods in question. He must not only have property absolute or qualified, and the right of possession at the time of the commencement of the action, but he must have the exclusive right of possession.").

DART and Fracassi argue that UFA cannot bring a cause of action for conversion or replevin because UFA is not the true owner of the artwork. (DART Br. p. 14; Fracassi Br. p. 7.) UFA acknowledges that it does not own the artwork. (*See* Compl. ¶ 23.) However, UFA contends that it may bring its claims for two reasons: (1) the UFA contract states that, in the event of default in

11

payment, UFA has the right to "possession of the Artwork at any time, without the need of judicial title and without notice" and (2) "because none of the others claiming rights to the Artwork that prevents it from being released from the New Jersey Warehouse have a right to the Artwork that is superior to UFA's right to immediate possession of the Artwork." (UFA-D Opp. p. 29.)

UFA cannot maintain its claims of conversion and replevin under New Jersey law. The owner could perhaps bring such a claim. But UFA is not the owner and has not otherwise stated facts to support that it has a right to immediate possession. *See Peloro*, 488 F.3d at 174; *First Nat. Bank of Bloomingdale*, 14 A.2d at 767. UFA's reliance on its agreement with DART is misplaced because DART has no ownership interest in the artwork and, therefore, could not grant an ownership or possessory right to UFA. There is nothing in the complaint to support that the actual owner of the artwork granted UFA any such right. Indeed, the identity of the owner does not appear in the complaint.

Therefore, I will dismiss, without prejudice, the conversion and replevin claims against DART and Fracassi for failure to state a claim.

### 2. Fraud

The DART defendants seek dismissal of UFA's fraud claim (Count 3) for failure to state a claim.

To state a claim of common law fraud under New Jersey law, a plaintiff must allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997).

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement, over and above that of Rule 8(a). Specifically, it requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Malice,

intent, knowledge, and other conditions of a person's mind," however, "may be alleged generally." *Id.* That heightened pleading standard requires the plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (internal quotation and citation omitted). In general, "[t]o satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.*

> [Plaintiffs] need not, however, plead the "date, place or time" of the fraud, so long as they use an "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." The purpose of Rule 9(b) is to provide notice of the "precise misconduct" with which defendants are charged and to prevent false or unsubstantiated charges. Courts should, however, apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants.

*Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998) (internal citations omitted) (quoting *Seville Indus. Mach. v. Southmost Mach.*, 742 F.2d 786, 791 (3d Cir. 1984) and citing *Christidis v. First Pa. Mortg. Tr.*, 717 F.2d 96, 99 (3d Cir. 1983)).

UFA's fraud claim against the DART defendants is based on the following allegations:

> (a) the August 19, 2021 text messages representing that the Artwork was intended to be acquired for display at DART, which they represented to be a "museum,"
>
> (b) the text messages sent on or about August 27, 2021 representing that DART "donors" needed to see and verify the Artwork in the New Jersey Warehouse along with other works being acquired for DART to enable DART to pay for the Artwork,
>
> (c) the text messages sent on or about August 27, 2021 representing that all would proceed at the New Jersey Warehouse "as it was planned with Aiston," *i.e.*, the Artwork would be held

13

> under the name of UFA in accordance with the DART-UFA Contract, and
>
> (d) in email correspondences dated December 28, 2021 that delays in payment for the Artwork were caused by "bureaucracy problems," "winter holidays," bank errors, and other immaterial matters.

(Compl. ¶ 89.) UFA also claims that the DART defendants and Marescalchi knew that those statements were false because, at all relevant times, they "intended to use the Artwork as collateral for a loan from Art Lending to 'flip' the Artwork for a large profit via Oblyon." (*Id.* ¶¶ 90–91.) Additionally, the DART defendants made those misrepresentations in order to induce plaintiff to transfer the artwork to the New Jersey warehouse to complete their unlawful purpose, and UFA justifiably relied on those statements based on prior interactions and agreements with Marescalchi and the DART defendants. (*Id.* ¶¶ 92–93.)

I find that the above facts satisfy Rule 9(b)'s requirements by stating the "precise misconduct" with which defendants are charged. As described above, the complaint states when the alleged misrepresentations occurred, what those misrepresentations consisted of, or otherwise injects enough precision into the fraud allegations to place the defendants on notice of the conduct at issue. *See Frederico*, 507 F.3d at 200.

The DART defendants argue that UFA fails to state with specificity who made the fraudulent statements. (DART Br. p. 12.) That is incorrect. UFA states that the statements were made by "DART, Lanza, Manfrin, and Marescalchi, directly or through Marescalchi." (Compl. ¶ 89.) Therefore, UFA has "inform[ed] each defendant as to the specific fraudulent acts he or she is alleged to have committed." *See Poling v. K. Hovnanian Enterprises*, 99 F. Supp. 2d 502, 508 (D.N.J. 2000). Similarly, the DART defendants' position that the statements are attributed to Marescalchi alone is unavailing because the DART defendants are alleged to have directed Marescalchi to make those statements. (*See* DART Br. p. 12; Compl. ¶ 89.) The DART defendants' other arguments

14

relate to whether UFA has adequately pleaded the other elements of fraud, namely reliance, materiality, and falsity. (DART Br. pp. 12-13.) I find that the complaint generally alleges those elements, as required under Rule 9(b), and will not dismiss the fraud claim on this basis.

Therefore, the DART defendants' motion to dismiss the fraud claim is denied.

### 3. Aiding and Abetting Fraud

Fracassi seeks dismissal of the aiding and abetting fraud claim (Count 4) for failure to state a claim.

To state a claim for aiding and abetting fraud, a plaintiff must allege an underlying wrong (*i.e.*, the fraud committed by some other party), that the defendant was aware of its role in the tortious activity at the time it provided the assistance, and that the defendant "knowingly and substantially assist[ed] the principal violation." *State Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l*, 387 N.J. Super. 469, 483 (App. Div. 2006) (quoting *Tarr v. Ciasulli*, 181 N.J. 70, 84 (2004), and finding that the New Jersey Supreme Court's adoption of the Restatement definition of aiding and abetting applies to fraud).

The complaint is devoid of facts which, if true, would establish that Fracassi knowingly and substantially assisted a third party's fraud on UFA, as described in the complaint. The only action Fracassi is alleged to have engaged in is placing the artwork in Oblyon's account at the New Jersey warehouse. (Compl. ¶¶ 50–52.) Regarding Fracassi's knowledge that it was participating in or facilitating a fraud, the complaint is particularly lacking. It states only the following conclusory allegation: "Defendants' DART, Lanza, Manfrin, and Marescalchi's fraud was perpetrated on [UFA] through their commission of wrongful acts, including the unauthorized transfer of the Artwork to Oblyon and then to Art Lending with the knowing and substantial participation of Fracassi, Oblyon, and Art Lending." (Compl. ¶ 98.) There are no facts to support that Fracassi substantially assisted in the fraud, such as by inducing

15

UFA to move the artwork to the New Jersey warehouse, assisting Oblyon to transfer the artwork to Art Lending's account, or assisting DART to obtain a loan using the artwork as collateral. There are also no facts to support that Fracassi had knowledge that placing the artwork in Oblyon's account was in furtherance of those actions. Fracassi's involvement, as currently alleged, would appear to be no more than ministerial.

Therefore, I will dismiss, without prejudice, the aiding and abetting fraud claim against Fracassi for failure to state a claim.

### 4. Conspiracy

The DART defendants and Fracassi seek dismissal of the conspiracy claim (Count 6) for failure to state a claim.

To state a claim for civil conspiracy under New Jersey law, a plaintiff must show: "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003). A purported conspirator must have understood "the general objectives of the scheme, accept[ed] them, and agree[d], either explicitly or implicitly, to do [its] part to further them." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177 (2005) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)). To survive a Rule 12(b)(6) motion to dismiss, allegations of a conspiracy must provide "some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. Sup. Ct. of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009).

The DART defendants' sole reason for dismissal of the conspiracy claim is that UFA fails to properly plead its underlying fraud claim. (Compl. ¶ 13.) Having found that UFA properly pleaded the fraud claim against the DART defendants, I will not grant the motion to dismiss the conspiracy claim on this basis.

Fracassi seeks dismissal of the conspiracy claim for a different reason. Fracassi asserts that the complaint's conclusory allegations "do[] nothing more than place Fracassi in a chain of custody that ultimately led to its alleged harm" and contains "no allegation that Fracassi was aware of any broader scheme to [defraud] UFA." (Fracassi Br. pp. 11-12.) I agree. As stated above, the only action Fracassi is alleged to have engaged in is the placement of the artwork in Oblyon's account. (Compl. ¶¶ 50–52.) The complaint contains no facts that, if taken as true, support that Fracassi was aware of the general objectives of the scheme and agreed to act in furtherance of that scheme. *See Banco Popular N. Am.*, 184 N.J. at 177.

Therefore, the motion of the DART defendants to dismiss the conspiracy claim is denied. However, I will dismiss, without prejudice, the conspiracy claim against Fracassi.

### 5. Breach of Bailment Agreement

Fracassi seeks dismissal of the breach of bailment agreement claim (Count 8) for failure to state a claim.

"The elements of a 'bailment' are delivery of personal property by one person to another in trust for a specific purpose, acceptance of such delivery, and express or implied agreement to carry out the trust and return the property to the bailor." *Srgo v. Getty Petroleum Corp.*, 854 F. Supp. 1164, 1175 (D.N.J. 1994).

The complaint fails to state any facts to support that UFA and Fracassi entered into an agreement with respect to the transfer of the artwork to the New Jersey warehouse. To the extent UFA relies on the Purchase Agreement, which provides that the parties to that agreement would enlist Fracassi to ship the artwork to the Aiston warehouse, such reliance is misplaced. (*See* DE 8-3.) Fracassi is not a party to the Purchase Agreement. Even assuming *arguendo* that the Purchase Agreement is enforceable against Fracassi, it does not appear to impose any specific duties regarding the transfer of the artwork to the New Jersey warehouse that Fracassi could have breached.

Therefore, I will dismiss, without prejudice, the breach of bailment agreement claim against Fracassi.

## III. CONCLUSION

For the reasons set forth above, Fracassi's motion to dismiss the complaint for failure to state a claim is **GRANTED**. The DART defendants' motion to dismiss for lack of personal jurisdiction is **DENIED**. The DART defendants' motion to dismiss for failure to state a claim is **GRANTED** as to Counts 2 and 5 and **DENIED** as to Counts 3 and 6. These dismissals are entered without prejudice to the filing of a proposed amended complaint within 30 days. A separate order will issue.

Dated: March 27, 2023

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**