SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 03M

-----------------------------------------------------------------------X

SOTHEBY'S, INC., MARIA IRIDE CRIPPA,

                            Plaintiffs,

                            - v -

AUGUST URIBE FINE ART, LLC,

                            Defendant.

| | |
|---|---|
| **INDEX NO.** | 651350/2023 |
| **MOTION DATE** | 12/12/2023 |
| **MOTION SEQ. NO.** | 002 |

**DECISION + ORDER ON MOTION**

-----------------------------------------------------------------------X

HON. JOEL M. COHEN:

The following e-filed documents, listed by NYSCEF document number (Motion 002) 33, 34, 35, 36, 37, 40, 43, 44, 49

were read on this motion to            DISMISS           .

       This intervenor-action involves a consignment agreement between Sotheby's, Inc. ("Sotheby's") and Maria Iride Crippa ("Ms. Crippa"), an Italian citizen living in Switzerland, for the sale of Pablo Picasso's painting *Le Peinture*. Sotheby's, as Intervenor-Defendant, moves pursuant to CPLR 3211(a)(1) and 3211(a)(7) to dismiss Counts I through V of the Intervenor-Complaint and to strike the demand for attorneys' fees. For the following reasons, the motion is granted in part.

## BACKGROUND

       According to the Intervenor-Complaint (NYSCEF 27 ["Intervenor-Compl."]), Sotheby's and Ms. Crippa entered into a Private Sale Agreement dated August 23, 2021 (as amended, the "Consignment Agreement"), pursuant to which Sotheby's agreed to act as Ms. Crippa's exclusive agent to sell the Pablo Picasso painting *Le Peinture* (the "Painting") privately for at least $5 million, after deduction of Sotheby's commission and reimbursable sale costs.

651350/2023   SOTHEBY'S, INC. vs. AUGUST URIBE FINE ART, LLC
Motion No.  002

Page 1 of 13

1 of 13

Section 3 of the Consignment Agreement, "Temporary Loan of Property to Buyer," provides that Ms. Crippa "acknowledge[s] and agree[s] that Sotheby's may temporarily loan the Property to the Buyer prior to the Buyer's payment of the Purchase Price in full and cleared funds. Title to the Property shall only pass to the Buyer upon our receipt of full payment of the Purchase Price in full and cleared funds" (the "Temporary Loan Provision") (NYSCEF 35 §3).

The Painting was sold on August 24, 2021, and was part of what Sotheby's described as a "back-to-back" arrangement under which it was understood that the buyer intended to promptly resell the Painting (*see* Tr. at 4:14–15). Toward that end, Sotheby's entered into a private purchase agreement with August Uribe Fine Art, LLC ("AUFA") to sell the Painting to AUFA for $5,500,000 (*id.* at ¶¶31, 32; NYSCEF 36 ["AUFA Purchase Agreement"]). Mirroring the Consignment Agreement, the AUFA Purchase Agreement contained a Temporary Loan Provision and stated that title to the Painting would not pass until the purchase price was paid in full (AUFA Purchase Agreement §§ 2, 3).

On August 25, 2021, Sotheby's delivered the Painting to Aiston Fine Art Services' warehouse in Long Island City, New York, which was identified in the AUFA Purchase Agreement as the location where AUFA would "hold" the Painting and agreed that it "will be returned to Sotheby's in the event [AUFA] fail[s] to timely remit the Purchase Price" (AUFA Purchase Agreement § 2).

On August 19, 2021—four days *before* Sotheby's and Ms. Crippa entered into the Consignment Agreement—AUFA executed a contract to sell the Painting to DARTMILANO S.R.L. ("DART") (*id.* at ¶ 41-42). In the DART Purchase Agreement, AUFA claimed that it "has full availability and title to sign this Private Agreement…" (*id.* at ¶ 43). The DART Purchase Agreement also included a provision stipulating that "[t]he Seller will remain the

651350/2023   SOTHEBY'S, INC. vs. AUGUST URIBE FINE ART, LLC
Motion No.  002

Page 2 of 13

2 of 13

legitimate and sole owner of the Artwork until the crediting of the balance amount as indicated above." (*id.* at ¶ 50). On August 27, 2021, DART convinced AUFA to transfer the Painting from Aiston Fine Art Services to SRI Fine Art Services in Clifton, New Jersey ("the New Jersey Warehouse") (*id.* at ¶ 46).

On August 31, 2021, Sotheby's notified Ms. Crippa that it had sold the Painting and that Ms. Crippa's net proceeds were $5,000,000 (Intervenor-Compl. ¶22). AUFA paid an initial deposit of $1.1 million and made subsequent payments totaling $1.2 million, but failed to pay the remainder of the Purchase Price (*id.* at ¶¶ 34, 40).

According to the Intervenor-Complaint, AUFA lost control of the Painting and has been unable to obtain performance from DART (*id.* at ¶ 49).

### *The Related Action*

On May 25, 2022, AUFA filed a complaint in the United States District Court for the District of New Jersey (the "Related Action") against DART and various third parties, asserting claims for conversion, replevin, fraud, conspiracy, and breach of the bailment agreement, among others (*id.* ¶ 53). AUFA's Complaint alleges that following AUFA's transfer of the Painting to the New Jersey Warehouse, third parties conspired to transfer the Painting from AUFA's account at the New Jersey Warehouse to that of third-party Oblyon at the same location. AUFA further alleges that Oblyon then transferred the Painting to another one of the third parties' account at the New Jersey Warehouse to serve as collateral for a loan to DART (*id.* at ¶¶47-48).

On March 23, 2023, the court in the Related Action granted in part DART's motion to dismiss AUFU's claims. As relevant here, the Court dismissed the conversion and replevin claims because AUFA did not plead it was the owner of the Artwork and stated no facts to

651350/2023 SOTHEBY'S, INC. vs. AUGUST URIBE FINE ART, LLC
Motion No. 002

Page 3 of 13

3 of 13

support a right to immediate possession of the artwork (NYSCEF 49 at 12; Intervenor-Compl. ¶54). The case remains pending.

*Procedural History*

Sotheby's commenced this action against AUFA on March 15, 2023 to obtain the outstanding unpaid portion of the Purchase Price ($3.2 million), plus applicable taxes, accrued and unpaid interest, and the costs and expenses incurred by Sotheby's in connection with collection of amounts due under the Purchase Agreement or, in the alternative, return of the Painting (NYSCEF 1, 2).

On November 21, 2023, the Court granted Ms. Crippa's motion to intervene (NYSCEF 24). Ms. Crippa alleges five causes of action against Sotheby's: breach of contract (Count I), fraudulent inducement (Count II), negligent misrepresentation (Count III), violation of N.Y. General Business Law § 349 (Count IV) and breach of fiduciary duty (Count V).

Sotheby's now moves to dismiss Ms. Crippa's claims.

## DISCUSSION

A motion to dismiss under CPLR 3211(a)(1) "may be appropriately granted only where the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (*Goshen v Mut. Life Ins. Co. of New York*, 98 NY2d 314, 326 [2002]). CPLR 3211(a)(7) permits dismissal when the "pleading fails to state a cause of action." A motion under either rule requires the Court to "accept the facts as alleged in the complaint as true [and] accord plaintiffs the benefit of every possible favorable inference . . . ." (*Leon v Martinez*, 84 NY2d 83, 87–88 [1994]). "[H]owever, 'allegations consisting of bare legal conclusions as well as factual claims flatly contradicted by documentary evidence are not

651350/2023   SOTHEBY'S, INC. vs. AUGUST URIBE FINE ART, LLC                     Page 4 of 13
Motion No.  002

4 of 13

entitled to any such consideration'" (*Myers v Schneiderman*, 30 NY3d 1, 11 [2017] [citations omitted]).

### A. Fraudulent Inducement & Negligent Misrepresentation

Ms. Crippa has failed to allege viable claims for fraudulent inducement or negligent misrepresentation.

To state a cause of action for fraud, a plaintiff must allege with particularity a representation of material fact, made for the purpose of inducing another to act on it, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury (*Kaufman v Cohen*, 307 AD2d 113, 119 [1st Dept 2003]). Similarly, "[t]o recover on a theory of negligent misrepresentation, a plaintiff must establish that the defendant had a duty to use reasonable care to impart correct information because of some special relationship between the parties, that the information was incorrect or false, and that the plaintiff reasonably relied upon the information provided" (*Grammer v Turits*, 271 AD2d 644, 645 [2d Dept 2000]).

The crux of Ms. Crippa's claims is that Sotheby's fraudulently or negligently misrepresented to Ms. Crippa that "[t]itle to the [Painting] shall only pass to the Buyer upon our receipt of full payment of the Purchase Price in full and cleared funds." Assuming for present purposes that this statement contained in the Consignment Agreement can be considered a statement of fact rather than an opinion as to a point of law (*Natl. Conversion Corp. v Cedar Bldg. Corp.*, 23 NY2d 621, 627 [1969] ["a statement as to the law, like a statement as to anything else, may be intended and understood either as one of fact or one of opinion only, according to the circumstances of the case'"]), the Court finds that it was not a misrepresentation.

651350/2023　SOTHEBY'S, INC. vs. AUGUST URIBE FINE ART, LLC　Page 5 of 13
Motion No. 002

5 of 13

Sales of artwork are governed by New York's version of the Uniform Commercial Code (*United States v Chowaiki*, 369 F Supp 3d 565, 572 [SDNY 2019] [applying New York law]). As relevant here, UCC section 2-401 provides in relevant part:

> (1) Title to goods cannot pass under a contract for sale prior to their identification to the contract (Section 2-501), and unless otherwise explicitly agreed the buyer acquires by their identification a special property as limited by this Act. Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of the Article on Secured Transactions (Article 9), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.
>
> (2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place….

(UCC 2-401[1],[2]).

Under this provision, the general rule is that "title to goods passes upon delivery, with the seller's rights limited to a reservation of a security interest" (*Subaru Distributors Corp. v Subaru of Am., Inc.*, 98 CIV 5566 CM, 2002 WL 188473, at *45 [SDNY 2002]). UCC § 2-401[1] primarily deals with the identification of goods under a contract for sale and it has been said that "[i]dentification is the earliest that title can pass, and shipment or delivery is the latest" (*In re Alcom Am. Corp.*, 156 BR 873, 884 [Bankr DDC 1993], *affd sub nom. ALCOM Am. Corp. v Arab Banking Corp.*, 48 F3d 539 [DC Cir 1995] [applying the UCC under New York and DC law]). The question here is whether it was fraudulent or negligently misleading for Sotheby's to assert, effectively, that the UCC permits the parties to agree to *modify* this general rule in a particular transaction, as Sotheby's did in its agreement with AUFA for sale of the Painting. The Court finds, as a matter of law, that it was not.

651350/2023   SOTHEBY'S, INC. vs. AUGUST URIBE FINE ART, LLC
Motion No. 002

Page 6 of 13

6 of 13

The Court agrees with the determination by the Southern District of New York (applying New York law) that section "2-401, like almost all of the UCC, is an 'unless otherwise agreed' provision. As long as the parties to a contract explicitly agree that title shall pass at some other time, it does . . .[T]he parties are free to agree that title passes prior to or subsequent to delivery" (*Subaru*, 2002 WL 188473, at *45; *see also Chowaiki*, 369 F Supp 3d at 575 ["To escape § 2-401(1)'s default rule, a contract must explicitly identify when title passes"]). This reading is consistent with the statutory language in section 2-401, which contains multiple references to its terms being subject to modification by explicit agreement of the parties. The notion that sophisticated buyers and sellers of art (or other goods) are rigidly prohibited from agreeing to a bespoke and conditional loan arrangement such as this one without irrevocably relinquishing title is inconsistent with the language of the statute and the overarching approach of the UCC to favor freedom of contract.[1]

Here, the Consignment Agreement accurately reflected the terms of the AUFA Purchase Agreement, in which AUFA expressly agreed that its receipt of the Painting was a temporary loan and that "[t]itle to the [Artwork] will pass to you when we receive full payment of the Purchase Price in cleared funds" (AUFU Purchase Agreement ¶ 3). The fact that AUFA (and its counterparties) exercised dominion over the Painting despite these contractual provisions does

---

[1] Ms. Crippa points out that a few decisions have interpreted Section 2-401(1) as limiting the parties' ability to contract around the default rule, with one opining that "although the seller may, by explicit agreement, designate when title shall pass, his reservation of title [after delivery] is treated in effect as a reservation of a security interest" (*L. B. Smith, Inc. v Foley*, 341 FSupp 810, 813 [WDNY 1972] [applying New York law]; *see also At Last Sportswear Inc. v Newport News, Holding Corp.*, 2010 NY Slip Op 32792[U] [Sup Ct, NY County 2010]; *Brandes v Pettibone Corp.*, 79 Misc 2d 651, 654 [Sup Ct, Monroe County 1974]; *Shanghai Changhong Int'l Trading Co. v K & D Logistics Co.*, 2002 WL 1732807, at *2 [EDNY 2002]). To the extent these decisions suggest that contracting parties are unable to agree to the type of lending agreement at issue in this case without passing title, the Court respectfully finds them unpersuasive.

651350/2023  SOTHEBY'S, INC. vs. AUGUST URIBE FINE ART, LLC
Motion No. 002

Page 7 of 13

7 of 13

not mean that Sotheby's defrauded or misled Ms. Crippa. Accordingly, her fraudulent inducement and negligent misrepresentation claims are dismissed.

### B. NY General Business Law § 349

GBL § 349(a) declares unlawful all "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." Section 349, "on its face, applies to virtually all economic activity" (*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v Matthew Bender & Co., Inc.*, 37 NY3d 169, 176 [2021]). "A plaintiff must allege that: (1) the defendant's conduct was consumer-oriented; (2) the defendant's act or practice was deceptive or misleading in a material way; and (3) the plaintiff suffered an injury as a result of the deception" (*id.*).

The Court of Appeals has explained that a plaintiff asserting a claim under the statute "must demonstrate that the acts or practices have a broader impact on consumers at large," and that "[p]rivate contract disputes, unique to the parties, … would not fall within the ambit of [GBL § 349]" (*Oswego Laborers' Local 214 Pension Fund v Mar. Midland Bank, N.A.*, 85 NY2d 20, 25 [1995]). Here, the Consignment Agreement involves a prototypical private contract dispute between sophisticated parties with respect to a $5 million painting. Even crediting Ms. Crippa's allegation that contract provisions such as those at issue here are widely used in the art market, this does not transform a private contract dispute into a consumer-oriented act (*New York Univ. v Cont. Ins. Co.*, 87 NY2d 308, 321 [1995] [finding consumer-oriented conduct not pled under GBL § 349 where "[t]he policy was not a standard policy, although it contained standard provisions, but was tailored to meet the purchaser's wishes and requirements"]). Accordingly, this claim is dismissed.

651350/2023   SOTHEBY'S, INC. vs. AUGUST URIBE FINE ART, LLC
Motion No. 002

Page 8 of 13

8 of 13

### C. Breach of Contract

Sotheby's motion to dismiss Ms. Crippa's breach of contract claim is granted in part. The elements of breach of contract claim include "the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages" (*Harris v Seward Park Hous. Corp.*, 79 AD3d 425, 426 [1st Dept 2010]). Ms. Crippa alleges that Sotheby's breached the agreement by (1) allowing title transfer to AUFA before receipt of full payment, (2) failing to remit a $55,000 credit it gave to AUFA on the purchase price, and (3) losing control of the painting under Section 9 of the agreement.

As to the first allegation, Ms. Crippa's breach of contract claim on the same issue fails for the same reason as her fraudulent and negligent misrepresentations fail. Sotheby's did not permit title to transfer to AUFA before receipt of full payment.

However, the remaining breach of contract allegations state potentially viable claims. According to the Crippa Sale Agreement, Sotheby's was obligated to pay the net sale proceeds within five business days of receiving each installment (Intervenor-Compl. at ¶ 71). On or before December 22, 2021, Sotheby's allegedly credited AUFA $55,000 toward the purchase price of the Painting as an offset towards Sotheby's debt owed to AUFA. To date, Ms. Crippa has not received from Sotheby's the proceeds from that $55,000 credit. Sotheby's states that it intends to apply the $55,000 credit to reduce its own $500,000 commission (NYSCEF 37 at 25 n.11). However, as Ms. Crippa points out, Sotheby's only earns a commission after remitting purchase monies received to Ms. Crippa and has credited $55,000 as having been received. Accordingly, this claim is sustained.

Finally, under the terms of the Consignment Agreement, § 9(a), Sotheby's assumed liability for any loss or damage incurred while the Painting remained within its custody or

651350/2023 SOTHEBY'S, INC. vs. AUGUST URIBE FINE ART, LLC
Motion No. 002

Page 9 of 13

9 of 13

control. The parties dispute the meaning of "loss" in the contract. In particular, Sotheby's asserts that property is not considered "lost" when it is temporarily unavailable but physically undamaged.

The Court finds Sotheby's analogy to recent COVID insurance cases to be unpersuasive. While it is true that "to recover under the terms of [insurance] policies that insure against *physical loss or damage*, the plaintiffs must allege actual physical damage" (*Madison Sq. Garden Sports Corp. v Factory Mut. Ins. Co.*, 213 AD3d 459, 460 [1st Dept 2023], *lv to appeal denied*, 41 NY3d 902 [2024] [emphasis added]; *see also Consol. Rest. Operations, Inc. v Westport Ins. Corp.*, 205 AD3d 76, 82 [1st Dept 2022], *lv to appeal granted in part, dismissed in part*, 39 NY3d 943 [2022], *and affd*, 2024 NY Slip Op 00795 [Ct App Feb. 15, 2024]; *Source Food Tech., Inc. v U.S. Fid. and Guar. Co.*, 465 F3d 834, 836 [8th Cir 2006]), here Section 9(a) refers only to "loss of or damage to the Property," not to *physical* loss or damage. Furthermore, *Consolidated Restaurant* and *Madison Sq. Garden* considered if there was "loss" to real property (real estate) that was within the *insured's possession* and would not have been capable of being "lost," which is hardly analogous in these circumstances.

Here, Section 9(a) addresses "loss of . . . the Property." Absent any definition in the Consignment Agreement, the plain meaning controls. "Loss" can mean "[t]he failure to maintain possession of a thing" (Black's Law Dictionary [11th ed. 2019]). At a minimum, that is a reasonable reading of the language. Here, Ms. Crippa has sufficiently alleged that Sotheby's has failed to maintain possession of the Painting, and therefore has lost control over the Painting. Accordingly, this claim is sustained.

651350/2023   SOTHEBY'S, INC. vs. AUGUST URIBE FINE ART, LLC
Motion No. 002

Page 10 of 13

10 of 13

### D. Breach of Fiduciary Duty

Sotheby's motion to dismiss the breach of fiduciary duty is granted in part. "To state a claim for breach of fiduciary duty, plaintiffs must allege that (1) defendant owed them a fiduciary duty, (2) defendant committed misconduct, and (3) they suffered damages caused by that misconduct." (*Burry v Madison Park Owner LLC*, 84 AD3d 699, 700 [1st Dept 2011]). In the Intervenor-Complaint, Ms. Crippa alleges a series of breaches of fiduciary duty, only some of which survive the motion to dismiss.

First, Ms. Crippa alleges, and Sotheby's does not dispute, that Sotheby's role as Ms. Crippa's agent gives rise to an independent fiduciary duty that predated the Consignment Agreement. Further, Ms. Crippa's allegations relating to Sotheby's decision to enter into a "back-to-back" contract with AUFA have been sufficiently stated—namely that Sotheby's failed to sufficiently investigate AUFA or its ability to pay the full purchase price before entering into the AUFA Purchase Agreement, allowed AUFA to enter an onward sale agreement (the Dart purchase agreement) before entering the Consignment Agreement and paying the full purchase price, and failed to confirm that AUFA satisfied its obligation to obtain the contractually mandated insurance coverage while on loan to AUFA under Sec. 2(e) of the AUFA Purchase Agreement (Intervenor Compl. ¶¶ 124, 126, 131). Accordingly, these allegations are sustained.

However, for the reasons already stated, the allegations relating to the Temporary Loan Provision are dismissed (*see* Intervenor Compl. ¶¶ 127-130). Furthermore, the claim relating to Sotheby's treatment of AUFA's December 2021 payment setoff seeks the same damages as in her breach-of-contract claim and is therefore duplicative and is dismissed as a separate claim for relief (*id.* ¶132) (*see William Kaufman Org., Ltd. v Graham & James LLP*, 269 AD2d 171, 173 [1st Dept 2000] ["A cause of action for breach of fiduciary duty which is merely duplicative of a

651350/2023  SOTHEBY'S, INC. vs. AUGUST URIBE FINE ART, LLC
Motion No. 002

Page 11 of 13

11 of 13

breach of contract claim cannot stand"]). Finally, Ms. Crippa has not alleged what "confidential information" Sotheby's allegedly shared, or how Sotheby's failed to "meet or observe the regular and customary industry standards" (*id.* at ¶¶125, 133). Accordingly, these conclusory allegations are insufficient to state a claim.

### E. Attorney's Fees

Sotheby's motion to strike the demand for attorney's fees is granted. Since the Court has dismissed the GBL § 349 claim, Ms. Crippa's request for attorney's fees fails insofar as it is based on GBL § 349(h). Moreover, Ms. Crippa's request for attorney's fees under an implied indemnification contract theory also fails. A person is entitled to implied indemnity when he "in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other" (*McDermott v City of New York*, 50 NY2d 211, 217 [1980]). Ms. Crippa has failed to allege any facts supporting such a theory. Finally, the Consignment Agreement does not provide for an award of attorneys' fees. Therefore, the demand for attorney's fees is stricken.

Accordingly, it is

**ORDERED** that Defendant-Intervenor Sotheby's Motion to Dismiss the Intervenor Complaint is **GRANTED IN PART**, as follows: The first cause of action for breach of contract claim is dismissed insofar as it is based on the Temporary Loan Provision; the second cause of action for fraudulent inducement, the third cause of action for negligent misrepresentation, and the fourth cause of action for deceptive and unlawful practices under GBL §349 are dismissed; the fifth cause of action for breach of fiduciary duty claim is dismissed in part; and the demand for attorney's fees is stricken; the motion is otherwise **denied**; and it is further

651350/2023   SOTHEBY'S, INC. vs. AUGUST URIBE FINE ART, LLC
Motion No.  002

Page 12 of 13

12 of 13

**ORDERED** that the stay of discovery entered by this Court on the record on April 18, 2024, pending this Decision and Order is hereby vacated and discovery shall proceed based on the claims that remain in the case.

This constitutes the Decision and Order of the Court.

|  |  |
|---|---|
| 5/7/2024 | _[signature]_ 20240507134915JMCOHEN48BA5BBA3D21441797B143D7074B2F15 |
| **DATE** | **JOEL M. COHEN, J.S.C.** |

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION |  |
|---|---|---|---|
|  | ☐ GRANTED ☐ DENIED | ☒ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER |  |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

651350/2023   SOTHEBY'S, INC. vs. AUGUST URIBE FINE ART, LLC
Motion No.  002
Page 13 of 13

13 of 13