DocuSign Envelope ID: D4FC3980-4727-4A88-84B7-6908BBDC2DBC

# Sotheby's

1334 York Avenue
New York, New York 10021
+1 212 606 7000   SOTHEBYS.COM

## PRIVATE SALE AGREEMENT

August 23, 2021

Signora Maria Iride Crippa
Via Collina d'Oro 4
LUGANO 6900
Switzerland

**PROPERTY:**
PABLO PICASSO
*Le Peintre*
oil on canvas
39¼ by 31¾ in. 100 by 81 cm.
Executed in 1967.

This confirms our agreement to offer for private sale your property shown above, subject to the Terms and Conditions set forth on the following pages. This first page sets out some key information relating to this consignment. See the Terms and Conditions for additional information and the meaning of capitalized terms. The Terms and Conditions are an integral part of this agreement.

**CONSIGNMENT:**   You retain us as your exclusive agent to offer and to sell the Property privately.

**TERM:**   The Term of this agreement will be a period of 30 days from the date you sign this agreement.

**PRICE:**   We will offer the Property at a Purchase Price that, after deduction of our commission and reimbursable sale costs, if any, will equal or exceed the Net Price of $5,000,000.

**INSTALLMENT PAYMENT TERMS:**   We may offer the Buyer the right to pay the total Purchase Price in two installments. If the Buyer accepts installment payment terms, our agreement with the Buyer will provide that the installments are payable as follows:

(a) a nonrefundable deposit of 20% of the Purchase Price, plus any applicable taxes, is due to Sotheby's no later than September 10, 2021; and

(b) the remainder of the Purchase Price, plus any applicable taxes, is due to Sotheby's no later than 90 days after the Buyer receives a Sotheby's invoice for the sale of the Property.

**SETTLEMENT:**   If the Property is sold, we will pay you the Net Sale Proceeds from each installment of the Purchase Price pursuant to your Payment Instructions within five business days after we have received such installment of the Purchase Price in full and cleared funds, except in the case of cancellation or rescission of the sale of the Property permitted under the Terms and Conditions. If any payment date falls on a Saturday, Sunday or federal holiday, you will be paid on the next business day.

[Signature Page Follows]

CRIPPA_0000014

DocuSign Envelope ID: D4FC3980-4727-4A88-84B7-6908BBDC2DBC

# Sotheby's

Please confirm your agreement by signing, dating and returning to us a copy of this agreement.

Sotheby's, Inc.

Signed _Alison Lederman_

E28A319E5508401

Name   Alison Lederman

Date   24 August 2021

Title   Business Director, Private Sales

ACCEPTED AND AGREED:

Maria Iride Crippa

Signed _____

Date _____

SOTHEBY'S, INC. LICENSE NO. 1216058

2

CRIPPA_0000015

DocuSign Envelope ID: D4FC3980-4727-4A88-84B7-6908BBDC2DBC

# Sotheby's

## TERMS AND CONDITIONS

**1. Defined Terms.** In this agreement, "we", "us" or "our" refers to Sotheby's, Inc. and any affiliated company offering property for sale under this agreement, and "you" and "your" refer to the consignor(s) whose name(s) appears at the top of the first page of this agreement. To make this agreement easier to read, we have given the following capitalized words a specific meaning:

**Buyer:** the buyer of record for an item of Property.

**Net Price:** the minimum amount you will receive for the sale of the Property, provided we receive the Purchase Price.

**Net Sale Proceeds:** the Purchase Price we receive from the Buyer, less our commission and reimbursable sale costs, if any. The Net Sale Proceeds for an item of Property, provided they are received in full from the Buyer, will not be less than the Net Price for such item.

**Payment Instructions:** your signed payment instructions in the form attached as Exhibit A, or if we do not receive them from you, the payment instructions we receive in a mutually agreed upon manner or in a customary form of communication between you and us. We will have no liability for any loss, claim, or damage you sustain due to our reliance upon such payment instructions regardless of whether they resulted from any unauthorized or fraudulent activity by a third party.

**Property:** the item(s) of property consigned by you under this agreement and listed on the first page.

**Property Value:** for each item of Property, an amount equal to the Net Price.

**Purchase Price:** the price for the Property that is paid by the Buyer, and which will be an amount that, after deduction of our commission and reimbursable sale costs, if any, will be no less than the Net Price set forth on the first page of this agreement.

**Sotheby's Group:** Sotheby's, Inc., its subsidiaries and other companies within its corporate group.

**Term:** The period for which you retain us as your exclusive agent to offer and privately sell the Property.

**2. Consignment**

a.  During the Term, you will not offer or attempt to offer the Property for sale other than pursuant to the terms of this agreement. We may at any time, either before or after the sale, consult an expert or experts and research the provenance of the Property.

b.  If you are consigning the Property with one or more co-consignors, each consignor jointly and severally assumes the consignor's obligations and liabilities under this agreement. If you are an agent acting on behalf of a principal who is not signing this agreement, you and the principal jointly and severally assume the consignor's obligations and liabilities under this agreement.

c.  We may offer the Property to any type of buyer, including without limitation individuals, institutions, galleries, and art dealers, without regard to a potential buyer's future use or disposition of the Property.

d.  Sotheby's may agree with the Buyer that the Buyer's payment of the Purchase Price is subject to the Buyer's written confirmation to Sotheby's that the Buyer has completed its inspection of the Property to their satisfaction by a deadline to be agreed between Sotheby's and the Buyer (the "Confirmation"). For the avoidance of doubt, where the Buyer fails to make the Confirmation, the purchase agreement with the Buyer will become null and void and Sotheby's shall have the right to offer and sell the Property to other potential buyers on the terms of this agreement until the end of the Term.

**3. Temporary Loan of Property to Buyer.** You acknowledge and agree that Sotheby's may temporarily loan the Property to the Buyer prior to the Buyer's payment of the Purchase Price in full and cleared funds. Title to the Property shall only pass to the Buyer upon our receipt of full payment of the Purchase Price in full and cleared funds. While the Property is in the Buyer's (or the Buyer's agent(s)) care, custody and control, the Buyer assumes risk and responsibility for loss of or physical damage to the Property.

**4. Sales Commission.** We will retain solely for our account, as our commission for each item of Property sold, any portion of the Purchase Price in excess of the Net Price, provided that our commission for any item of Property will not exceed the combined amount we would charge for buyer's premium and standard selling commission if the Property were sold at auction in New York, calculated using the sum of the Purchase Price plus any sale costs we bear as the hammer price. We may remunerate any of our employees out of the commission we earn on the sale of Property.

**5. Sale Costs.** We will bear all sale costs, including for packing, shipping and customs duties for shipping the Property to our premises, and the costs for authentication or other services, such as framing, restoration or gemological tests, if applicable.

**6. Collection and Inspection of the Property.** Upon execution of this agreement, you will ship the Property to us or make it available for us to collect. Our obligations under this agreement are subject to our receipt of the Property at our premises prior to the expiration of the Term. If we have not inspected the Property in-person prior to execution of this agreement, we may modify or cancel this agreement upon our in-person inspection of the Property if it is not satisfactory to us.

**7. Representations and Warranties.** You represent and warrant to us and each Buyer (as an intended beneficiary) at all relevant times (including at the time of consignment and at the time of sale of the Property) that:

a.  you have sole, complete and lawful right, title and interest in the Property; or, if you are acting as an agent, your principal has sole, complete and lawful right, title and interest in the Property, and you are properly authorized by your principal to sell the Property on these terms;

b.  there are no claims or potential claims, legal proceedings, liens (except for estate tax liens, if any, with respect to which the underlying obligations will be satisfied by you as they come due, if applicable), security interests, encumbrances or other restrictions on or regarding the Property, and you have no knowledge of any facts or circumstances that might give rise to any claims in connection with the Property;

c.  good and marketable title to and right to possession of the Property will pass to the Buyer free from any third-party rights, liens, security interests, claims or potential claims, restrictions or encumbrances;

d.  you have fully disclosed to us all information known to you or in your possession that might affect the sale or value of the Property, including but not limited to information concerning the Property's condition (including any damage or restoration), provenance, ownership, authenticity, attribution, authorship, origin, date, age, period, culture, source, and export or import history, and the existence of any endangered or protected species in the Property, as applicable, and you shall continue to disclose any such information that becomes known to you up to and including the date on which the Property is sold;

e.  if the Property has been imported into the country in which it is located, it was lawfully imported, required declarations were made, any duties and taxes were paid, and it was lawfully and permanently exported from the country or jurisdiction in which it had been located;

f.  you have notified us in writing of any taxes and/or duties that are payable by us on your behalf in any country other than the country of the applicable sale location;

g.  your performance under this agreement has not and will not violate any applicable law, regulation or code in any jurisdiction;

h.  your consignment of the Property for sale does not facilitate tax crimes;

i.  you have no knowledge or reason to suspect that (i) the Property is connected with the proceeds of criminal activity, or (ii) you, or any co-owner(s) or principal(s) (or, if you are an entity, any person(s) or entity(ies) with a beneficial or ownership interest in you), are under investigation, charged with, or convicted of any substantive or predicate money laundering or economic sanctions crime, terrorist activity, tax evasion or act in violation of any anti-bribery or anti-corruption law, including the UK Bribery Act 2010 and the US Foreign Corrupt Practices Act;

j.  you (and your principal, if applicable) are not, nor are you or your principal (if applicable) owned, controlled, or acting on behalf of, an entity or individual that is: (i) the subject of economic sanctions, embargoes or other trade restrictions in any jurisdiction, including those administered and enforced by the United States, European Union, United Kingdom, United Nations Security Council, or other applicable sanctions authority (collectively, "**Sanctions**"), or (ii) located, organized, or resident in a country or territory that is the subject of Sanctions (including Crimea, Cuba, Iran, North Korea, and Syria) (collectively, "**Sanctioned Jurisdictions**"); and you will not transfer the Net Sale Proceeds to, or use them for the benefit of, anyone that is the subject of Sanctions or located, organized, or resident in a Sanctioned Jurisdiction;

SOTHEBY'S, INC. LICENSE NO. 1216058

CRIPPA_0000016

DocuSign Envelope ID: D4FC3980-4727-4A88-84B7-6908BBDC2DBC

# Sotheby's EST. 1744

k.   if you are acting as agent on behalf of a principal, you have disclosed to us the identity of your principal and have taken steps reasonably designed to ensure compliance with Sanctions, anti-money laundering, anti-terrorism, and anti-bribery or anti-corruption laws, including but not limited to, conducting appropriate due diligence on your principal, and all commissions payable to you for this consignment have been authorized by your principal; and

l.   you have full legal authority without any further action or other party's consent to enter into and perform this agreement and to give these representations and warranties; if you are an entity, the individual signing on your behalf is authorized to do so and the entity is duly incorporated or formed, validly existing and in good standing in the jurisdiction where it is incorporated or formed.

**8.   Indemnity.** You shall indemnify and hold us and each Buyer (as an intended beneficiary) harmless against any and all claims, causes of action, losses and liabilities, including reasonable attorneys' fees, relating to an inaccuracy or alleged inaccuracy or breach or alleged breach of any of your representations and warranties or obligations under this agreement.

**9.   Loss or Damage**

a.   We will bear liability for loss of or damage to the Property from when we receive the Property and while it is in our custody or control, except as set out below.

b.   We will not be liable for any loss or damage (i) that occurs when the Property is not in our custody or control or during any process undertaken by third parties engaged with your consent, including for restoration, conservation, framing or cleaning; (ii) to frames or glass coverings; or (iii) caused by changes in humidity or temperature, inherent conditions or defects, normal wear and tear, war, acts of terrorism, nuclear fission, radioactive contamination, or chemical, bio-chemical or electromagnetic weapons.

c.   In the event of loss of or damage to the Property for which we bear liability (a "Covered Loss") that results in a depreciation in value, in our opinion, of less than 50%, we will (i) pay you the differential between the pre-loss/damage Property Value and the value, in our opinion, of the Property after the loss or damage and restoration, if applicable (the "Depreciation Amount"), and (ii) offer the Property for sale or, at your request, return it to you.

d.   In the event of a Covered Loss that results in a depreciation in value, in our opinion, of 50% or more, we will pay you the Property Value, less the sale costs payable by you under this agreement, if any, and all title and interest to the Property will pass to us.

e.   In the event of a Covered Loss, your sole remedy against us will be the payment of the Property Value or the Depreciation Amount and our obligation to compensate you shall not exceed the Property Value. Upon your receipt of the Property Value or the Depreciation Amount, you irrevocably release and discharge us, on your own behalf and on behalf of your insurer(s), from all liability for loss of or damage to the Property.

**10.   Unsold Property.** If the Property remains unsold at the expiration of the Term, we will notify you and, unless we and you agree on another course of action, we will return it to you at our expense, including the cost of in-transit insurance. We will not release to you any unsold Property until all amounts owed to us or any Sotheby's Group company have been paid in full.

**11.   Buyer Failure to Pay.** We may impose on the Buyer and retain for our account a late charge if payment is not received when due. If a Buyer does not pay in full, we have no obligation to enforce payment by the Buyer. In such case, if you and we do not agree on another course of action, we may cancel the sale and return the Property to you. If we pay you any amount and have not collected from the Buyer payment of such amount, simultaneously with any such payment, you hereby assign to us all rights you may have against such Buyer to the extent of such payment.

**12.   Guarantee to the Buyer**

a.   We and you will guarantee to the Buyer for a period of four years from the date the Property is sold that the authorship, period, culture or origin of each item of the Property is as set out in the bold or capitalized type heading in the description of such item on the first page of this agreement. This guarantee is not assignable, and it is applicable only to the Buyer and not to any subsequent owner or owners who acquire an interest in the Property.

b.   The Property will be offered "AS IS," and neither you nor we will make any representation or warranty with respect to merchantability, fitness for a particular purpose, the physical condition, size, quality, rarity, importance, provenance, restoration, exhibitions, literature or historical relevance of the Property, and no statement anywhere, whether oral or written, will be deemed such a representation or warranty. We make no guarantee, representation or warranty to you with respect to the Property.

**13.   Rescission.** We may rescind the sale of the Property if we reasonably determine (a) the Buyer is entitled to rescind the sale under the terms of the guarantee to the Buyer, (b) any of your representations and warranties are inaccurate or breached, (c) the sale may damage our reputation or brand, or (d) the sale is illegal or has subjected or may subject us to liability. In any such case, we will credit the Buyer with the Purchase Price, if paid, you will return to us any amount we paid you (or a third party as directed by you) for such Property, and you will reimburse us for costs incurred in connection with the rescinded sale, including the reasonable attorney's fees we incur in collecting from you any such amounts due. Upon such reimbursement, we will release the Property to you, unless it is subject to a title claim.

**14.   Use of Proceeds and Property.** If you owe any amount or have breached or defaulted on any other obligation owed to any Sotheby's Group company, we may use the Net Sale Proceeds against any amounts you owe us or another Sotheby's Group company and pay any amount remaining to you.  We also may use or deal with any of your property any Sotheby's Group company holds in any way permitted by law, including by selling it in any way we think appropriate. We will release such

property to you only after you pay us in full for what you owe. If we sell such property, we will use the Net Sale Proceeds against any amounts you owe us and pay any remainder to you. If there is a shortfall, you shall pay us any difference between the amount we have received from the sale and the amount you owe us.

**15.   Taxes**

a.   Your sale of the Property is not designed to facilitate tax evasion or tax fraud, and you are solely responsible for paying all taxes and/or duties due on the Net Sale Proceeds you receive.

b.   Where we are required by law to withhold tax from any payment due to you, you authorize us to withhold such amounts from the Net Sale Proceeds.

c.   If we are required to pay any taxes, duties, VAT or any other applicable tax on your behalf in any country other than the country of the applicable sale site, you authorize us to withhold such amounts from the Net Sale Proceeds or, if you have already received the Net Sale Proceeds, you shall reimburse us for any such amounts we pay, to the extent permissible by law.

d.   If we are required to collect any taxes, duties, VAT or any other applicable tax on your behalf, we will provide such amount to you, and you agree to timely remit it to the relevant tax authority as required.

e.   You must provide to us the appropriate information (e.g., information requested on a Form W-9 or equivalent if you are a **"U.S. Person"**, as defined below, or a Form W-8BEN/BEN-E or equivalent if you are not a U.S. Person) required to legally obtain a reduction to or elimination of tax we may be required to withhold. A "U.S. Person" is a United States citizen or resident, or an entity, including an estate or trust, formed under the laws of the United States. If you have previously provided the required information to a Sotheby's Group Company and it remains valid as of the date of this agreement with respect to payments hereunder, you hereby authorize such Sotheby's Group Company to release the information to us. If, prior to receiving a payment from us pursuant to this agreement, any such Form that you previously provided expires or becomes obsolete or inaccurate in any respect, you will promptly notify and provide us with updated and valid information. Failure to provide the appropriate information will result in us having to withhold U.S. tax from any payment due to you pursuant to this agreement.

f.   If you (i) are a U.S. Person or fail to provide the required information as set out in subparagraph (e) above, and (ii) sell more than 200 lots in a single selling location during the 2021 calendar year, or effective as of January 1, 2022, receive more than US$600 (or the equivalent in local currency of the selling location) in proceeds, we must report to the IRS (and possibly to your U.S. state) on Form 1099-K the amount of proceeds paid to you. Some U.S. states, including Massachusetts and Vermont, require reporting regardless of the number of lots sold. In any such case, we will provide you with a copy of the relevant form by the appropriate due date.

g.   You acknowledge that no one within Sotheby's Group has provided tax advice to you or for your benefit in connection with this agreement.

SOTHEBY'S, INC. LICENSE NO. 1216058

CRIPPA_0000017

DocuSign Envelope ID: D4FC3980-4727-4A88-84B7-6908BBDC2DBC

# Sotheby's EST. 1744

**16. Force Majeure.** Sotheby's is not liable for any delay in meeting nor failure to meet its obligations under this agreement and may terminate this agreement as a result of circumstances beyond its reasonable control or which make such performance impracticable, including without limitation any fire, flood, natural disaster, or other act of God; any riot, strike, or other civil or labor unrest; transportation or other infrastructural incapacitation, or inability to secure sufficient labor, power, essential commodities, or necessary equipment; any act of war, armed conflict, or terrorist attack; any governmental action or regulation enacted or effected following the execution of this agreement and which is prohibitive or restrictive of the sale of the Property, or any other performance contemplated by this agreement; any outbreak of disease, public health emergency, quarantine, epidemic, pandemic, nuclear or chemical contamination, or other condition that threatens the life, health, or safety of Sotheby's personnel, vendors, or clients as determined by Sotheby's in its reasonable discretion.

## 17. Miscellaneous

a.   This agreement will be governed by and construed in accordance with the laws of the State of New York. In the event of a dispute arising from or relating to this agreement, you will submit to the exclusive jurisdiction of the state courts of and the federal courts sitting in the State and County of New York.

b.   This agreement is binding upon and effective for the benefit of your estate, heirs, executors, devisees, representatives, administrators, successors and assigns.

c.   You may not assign your rights or delegate your obligations under this agreement without our prior written consent.

d.   You may not grant a security over the Property or do anything that may result in a lien, claim or encumbrance on the Property through the time of its sale.

e.   This agreement, including any schedules, constitutes the entire agreement between us and you with respect to this consignment and supersedes all prior or contemporaneous written, oral or implied understandings, representations or agreements relating to the subject matter of this agreement. No provision of this agreement may be amended or waived unless you and we agree in a signed writing to do so.

f.   The provisions in this agreement that by their nature are intended to survive termination or the completion of the transactions contemplated will so survive.

g.   We may impose and retain a late charge of 1.5% per month on any amount you owe to Sotheby's Group that is unpaid for more than 15 days after we notify you.

h.   Neither you nor we will be liable for any special, consequential, incidental or punitive damages.

i.   You will not disclose the terms of this agreement to any third party without our prior written consent, except to your attorneys or accountants on a need-to-know basis, or because of valid legal process compelling the disclosure, provided you first give us prompt written notice of such service of process and allow us an opportunity to seek a protective order.

j.   If we receive a subpoena relating to the Property or the agreement, you shall pay us the costs we incur, including reasonable attorney's fees, in responding to the subpoena.

k.   You will provide us, upon our request, verification of identity and any additional information required to comply with our Know Your Client ("KYC") requirements or to evidence your authority to sign this agreement. We may cancel this agreement or withhold the Net Sale Proceeds if you fail to or until you satisfy our KYC requirements.

l.   Sotheby's will hold and process your personal information and may share it with another Sotheby's Group company for use as described in, and in line with, Sotheby's Privacy Policy published on Sotheby's website at www.sothebys.com or available on request by email to enquiries@sothebys.com.

m.   You are aware of the relative advantages of consigning property for sale by auction versus private sale and have taken those considerations into account before signing this agreement.

n.   You have had the opportunity to consult an attorney of your choosing before signing this agreement, and we have not provided legal advice to you or for your benefit in connection with this agreement.

o.   This agreement may be executed in counterparts, each of which will be deemed an original and together constitute one instrument. Signatures sent by facsimile or email transmission or other electronic signatures are valid and binding and will be deemed an original.

5

CRIPPA_0000018

# Sotheby's

1334 York Avenue
New York, New York 10021
+1 212 606 7000 SOTHEBYS.COM

## AMENDMENT TO PRIVATE SALE AGREEMENT

February 17, 2022

Signora Maria Iride Crippa
Via Collina d'Oro 4
LUGANO 6900
Switzerland

**PROPERTY:**
PABLO PICASSO
*Le Peintre*
oil on canvas
39¼ by 31⅞ in. 100 by 81 cm.
Executed in 1967.

We refer to the Private Sale Agreement, between you and us, dated August 23, 2021. Capitalized terms used in this amendment without definition have the same meanings as in the Private Sale Agreement. You and we agree to amend the Private Sale Agreement as follows:

**PREVIOUS PAYMENTS:** You and we acknowledge that (a) on September 20, 2021, we remitted to you a non-refundable payment of $1,000,000 of the Net Sale Proceeds and (b) on February 1, 2022, we remitted to you a payment of $800,000 of the Net Sale Proceeds. The remainder of the Net Sale Proceeds that are due to you are $3,200,000.

You and we acknowledge that the Buyer is currently in default of their payment obligations and you and we have entered into this amendment in order to provide the Buyer a schedule to complete their payment of the remaining balance of the Purchase Price.

**REVISED INSTALLMENT PAYMENT TERMS:** You agree that we may offer the Buyer the right to pay the remaining balance of the Purchase Price in two installments. Our agreement with the Buyer will provide that the installments are payable as follows:

(a)    a non-refundable installment of $500,000 is due to Sotheby's no later than February 28, 2022; and

(b)    the remainder of the Purchase Price is due to Sotheby's no later than March 22, 2022.

**SETTLEMENT:** We will pay you the Net Sale Proceeds from each installment of the Purchase Price pursuant to your Payment Instructions within five business days after we have received each installment of the Purchase Price in full and cleared funds, except in the case of cancellation or rescission of the sale permitted under the Terms and Conditions. If any payment date falls on a Saturday, Sunday or federal holiday, you will be paid on the next business day. To the extent we collect any interest payments from the Buyer, we will remit to you such amount of interest payment within five business days after we have received such amount from the Buyer.

*[Signature Page Follows]*



CRIPPA_0000026

# Sotheby's EST. 1744

You confirm that your representations and warranties in the Private Sale Agreement are true and correct as of the date you sign this amendment. As amended by this amendment, the Private Sale Agreement remains in full force and effect.

Please confirm your agreement with the above by signing, dating and returning to us a copy of this amendment.

**Sotheby's, Inc.**

Signed *Eliza Coven*    Date  2/18/2022

Name  Eliza Coven    Title  AVP, Business Manager

**ACCEPTED AND AGREED:**

Maria Iride Crippa

Signed    Date  18/2/2022

CRIPPA_0000027