UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

AUGUST URIBE FINE ART, LLC,

*Plaintiff,*

- against –

DARTMILANO SRL, PIER GIULIO LANZA,
RICCARDO MANFRIN, MARIA STELLINA
MARESCALCHI, FRACASSI WORLDWIDE
SHIPPING SRL, OBLYON GROUP, LLC, and
ART LENDING, INC.,

*Defendants,*

- and –

A CERTAIN ARTWORK,

*Defendant-in-rem.*

Civil Case No. 22-cv-03104
(MCA) (JBC)

SOTHEBY'S, INC.,

*Intervenor-Plaintiff,*

- against –

DARTMILANO SRL, PIER GIULIO LANZA and
RICCARDO MANFRIN,

*Defendants,*

- and –

ART LENDING, INC.,

*Third-Party Defendant,*

- and –

A CERTAIN ARTWORK,

*Defendant-in-rem.*

1

MARIA IRIDE CRIPPA,

*Intervenor Plaintiff,*

- against –

DARTMILANO SRL, and ART LENDING, INC.

*Intervenor-Defendants.*

## DECLARATION OF LAUREL DEVORE

I, Laurel DeVore, hereby make this Declaration pursuant to 28 U.S.C. § 1746.

1.      I go by the name of Loie. I have worked in the art industry in various capacities for several decades. I have been a board member of several US art organizations, such as American Friends of the Louvre. Until recently, I was the Head of Programmes of the Colnaghi Foundation, a UK charity, in New York City. The Colnaghi Foundation's mission is to foster the study of pre-twentieth-century Art and Antiquities by, among other things, supporting and promoting research, publications, and the application of new technologies to art and heritage, conservation, and educational projects. In 2021, I co-founded the Athena Art Foundation, a UK charity which aggregates and posts, on its digital hub and social media feeds, innovative and accessible ideas, material and resources about pre-twentieth-century and contemporary art in museums and other locations around the world. Among other things, the Athena Art Foundation has worked successfully with museums to broaden their audiences.

2.      At various times I have been and am presently a New York City-based gallerist, art agent and art advisor.

2

3. I make this declaration based upon my personal knowledge of and involvement in the events set forth below, together with my review of the emails and WhatsApp messages that are attached hereto.

4. I have personally known August Uribe for about twenty years. He was a long-time director and vice chairman at Sotheby's in New York City. In the summer of 2021, I knew Mr. Uribe to have been on his own, as an art agent, in search of one or more Picasso paintings for a potential buyer.

5. I have personally known Marco Mercanti and Melissa Barbagallo since early 2020. At the time of the events set forth below that occurred in February 2022, I knew them to be married to one another, and to own a company named Oblyon, an art investment and financing company. I understood Obylon to, among other things, loan money to art buyers and to buy and sell art on behalf of clients.

6. In early February 2022, Ms. Barbagallo and I exchanged a few WhatsApp messages and spoke about potential paintings, including Picassos. In particular, on February 17, 2022, we spoke and exchanged WhatsApp messages about the potential sale of two Picassos, namely the "Musketeer" and another Picasso.

7. On February 17, 2022, as a result of our communications earlier that day, Ms. Barbagallo sent me an email, advising that Oblyon's client had purchased Picasso's "*Le Peintre*" on the private market, Oblyon had financed the purchase, and it was in Oblyon's storage at SRI (which is an art storage warehouse in New Jersey). She further informed me that Oblyon's client wanted to seek $10 million in a sale. Based on our communications that day, I understood that I was authorized to seek a buyer for *Le Peintre* for that price, acting on behalf of Oblyon's client, for which I would receive a commission if successful.

3

8.      Knowing from the previous summer that Mr. Uribe had been seeking Picassos to purchase, I spoke to him later that same day. I explained that I was acting on behalf of the owner of *Le Peintre*, seeking to sell the painting.

9.      Mr. Uribe was flummoxed. He advised me that he had found *Le Peintre* for a buyer approximately six months prior thereto. We concluded that his buyer and my seller were likely one and the same.

10.     I immediately WhatsApp-ed Ms. Barbagallo with our suspicion – that Mr. Uribe's buyer was trying to sell *Le Peintre*. In her several ensuing replies, Ms. Barbagallo denied knowing whether it was the same entity, but stressed that: (a) I should not mention that her client's purchase had been financed; (b) her client had proved ownership of *Le Peintre*; and (c) her client did not want it known that it was re-selling *Le Peintre* so that I should keep it on the "downlow" when offering for sale.

11.     I then forwarded Ms. Barbagallo's email to Mr. Uribe.

12.     Attached hereto and made a part hereof as Exhibit 1 is a true, correct and complete copy of the WhatsApp conversations I had with Ms. Barbagallo in February, 2022. I personally downloaded this conversation from my phone.

13.     Attached hereto and made a part hereof as Exhibit 2 is a true, correct and complete copy of Ms. Barbagallo's email to me, and my forward of that email to Mr. Uribe.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 18th day of December, 2024.

Laurel DeVore

4